UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>    vs.<br><br>NATHANIEL JOHNROSS WEIBEL,<br><br>                    Defendant. | CR. 16-50027-JLV<br><br><br>ORDER |

**INTRODUCTION**

Defendant Nathaniel Weibel, appearing *pro se*, filed a motion for compassionate release.  (Docket 106).  Pursuant to the May 1, 2020, Standing Order 20-06, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions and briefing on Mr. Weibel's motion.  (Dockets 107-09, 113, 113-1 through 113-4, 115, 115-1 & 119).   For the reasons stated below, defendant's motion is denied.

**STANDING ORDER 20-06**

Standing Order 20-06,[1] captioned "Establishing a Procedure for Compassionate Release Motions Under the First Step Act," put in place "a procedure for submission and consideration of compassionate release motions under the First Step Act, 18 U.S.C. § 3582(d)(l)(A), in the wake of the spread of the COVID-19 virus into the federal prison system."   (SO 20-06 at p. 1).   Under

---

[1] See https://www.sdd.uscourts.gov/so2006 ("SO 20-06").

the order, the FPD is automatically "appointed to represent all defendants in criminal cases: (a) who previously were determined to be entitled to appointment of counsel or who are now indigent; and (b) who may be eligible to seek compassionate release under the First Step Act." Id. ¶ 1.  The initial step for the FPD is to

> communicate a recommendation to inmates interested in compassionate release that they immediately submit requests for compassionate release to the warden of the facility in which they are detained, if they have not done so already.  These communications will include the recommendation that the prisoner describe their proposed release plan.

Id. ¶ 2.

By the standing order, "within two business days of filing all motions for compassionate release[,]" the FPD and the United States Attorney for the District of South Dakota are "to place [the defendant] into one of four categories[.]"  Id. at p. 2 ¶ 4.  Those categories are:

    a.    High Priority Cases where there exists some combination of: (i) medical issues that correspond to the categories outlined in the commentary to U.S.S.G. § 1.B.1.13; (ii) recognized COVID-19 risk factors in the inmate's medical history; and/or (iii) imprisonment in a federal facility known to have a serious COVID-19 outbreak in its population. . . .

    b.    Intermediate Priority Cases where identified medical issues and/or COVID-19 risk factors and/or institutional concerns are less extreme than High Priority Cases.

    c.    Low Priority Cases where there are no identifiable medical issues or COVID-19 risk factors.

    d.    Unknown Risk Cases where there is a lack of sufficient information to categorize the request for compassionate release.

Id.  The FPD and U.S. Attorney are to "immediately report the categorization . . . to the Clerk of Court and the Probation Office."  Id.  The standing order contains provisions for sharing of critical information between the FPD, the U.S. Attorney, the Probation Office and the court.  Id. ¶ 5.  The priority of briefing is set according to the different categories of assignment of a defendant.[2]  Id. ¶¶ 6-8.

## FACTUAL BACKGROUND

On June 21, 2017, defendant Nathaniel Weibel was sentenced to a term of imprisonment of 300 months for attempted enticement of a minor using the internet in violation of 18 U.S.C. §§ 2422(b) and 2427.  (Docket 91).  According to Mr. Weibel's presentence report ("PSR"), "[b]ased on a total offense level of 39 and a criminal history category of VI, the guideline imprisonment range [was] 360 months to life."  (Docket 85 ¶ 134).

Mr. Weibel is currently an inmate at the United States Penitentiary in Tucson, Arizona ("USP Tucson").  (Docket 106 at p. 3).  According to the FPD, Mr. Weibel has a scheduled release date of October 12, 2037.  (Docket 113 at p. 1) (referencing https://www.bop.gov/inmateloc/); see also Docket 108 at p. 129).  After Mr. Weibel filed his motion for compassionate release, the BOP changed his release date to December 5, 2037.  See https://www.bop.gov/inmateloc/ (last accessed December 11, 2020).  No explanation for this 55-day difference has been provided to the court.  As of this date, Mr. Weibel had served

---

[2]SO 20-06 was amended on October 21, 2020, after this case was ripe for resolution.  See https://www.sdd.uscourts.gov/socraa.  The amendments have no impact on the court's analysis of this case.

19.3 percent of his sentence and under his current status in the BOP, Mr. Weibel's home detention eligibility date is April 12, 2037.  (Docket 108 at p. 129-30).   Mr. Weibel is 35 years old.   Id.

Mr. Weibel's *pro se* motion seeks compassionate release on the basis of extraordinary and compelling reasons in light of his personal health during the COVID-19 pandemic.  (Docket 106).   Mr. Weibel suffers from:

- Asthma.   (Docket 108 at p. 1);

- Epilepsy/seizure disorder.   Id.;

- Antisocial personality disorder (with BPD [bi-polar disorder] features).   Id.; and

- Unspecified depressive disorder.   Id.

Mr. Weibel's conditions are reaffirmed throughout his medical records. See Dockets 108-09.

Mr. Weibel "utilizes an albuterol inhaler to manage his asthma[,] . . . . takes Divalproex to manage his epilepsy/seizure disorder. . . . [and] takes Venlafaxine to manage his unspecified depressive disorder."   (Docket 113 at p. 14).   He argues:

> Failure to provide adequate mental health care, as may happen when health systems in jails and prisons are taxed by COVID-19 outbreaks, may result in poor health outcomes.   Moreover, mental health conditions may be exacerbated by the stress of incarceration during the COVID-19 pandemic, including isolation and lack of visitation.

Id. (referencing Docket 113-4 ¶ 29).

Mr. Weibel submits the Centers for Disease Control and Prevention ("CDC") indicate "[p]eople with moderate to severe asthma may be at higher risk of getting very sick from COVID-19.  COVID 19 can affect your respiratory tract (nose, throat, lungs), cause an asthma attack, and possibility lead to pneumonia and acute respiratory disease."  Id. at p. 16 (referencing https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions/asthma.html) (last accessed by defense counsel on June 2, 2020).  Mr. Weibel argues he is unable to practice the CDC's self-care recommendations while in prison because he cannot keep sufficient space between himself and others, clean his hand often by washing with soap and water or using an alcohol-based sanitizer or avoid crowds.  Id. at p. 17.  Instead, Mr. Weibel contends "[h]e must live, work, and sleep in close proximity to others and circulate in crowds at a prison teeming with COVID-19 cases."  Id.  Mr. Weibel argues "[t]he combination of [his] mental and physical medical conditions and his inability to adequately provide self-care to prevent COVID-19 meets [the standard of U.S.S.G. § 1B1.13, application note 1(A)(ii)(1)]."  Id. at p. 19.

Mr. Weibel represents that if released from custody he would "reside with his stepfather . . . in Rapid City, South Dakota. . . . [and would have] the support of his sister[.]"  Id. at p. 20.  If required to wear electronic monitoring, "Mr. Weibel would agree to abide by any such condition."  Id.  In Mr. Weibel's view "releasing [him] from prison is the safest possible outcome for him, other inmates, and society as a whole."  Id.

### MR. WEIBEL'S CLASSIFICATION

On May 18, 2020, the FPD and the U.S. Attorney filed a notice of categorization of compassionate release motion. (Docket 107). They jointly "agree [Mr. Weibel's] case should be categorized as an Intermediate Priority case." Id.

### ANALYSIS

The government opposes Mr. Weibel's motion for compassionate release. (Docket 115). First, the government argues Mr. Weibel's "chronic but manageable underlying medical condition [does not] constitute extraordinary and compelling circumstances." Id. at p. 2 (internal quotation marks omitted). "To be faithful to [18 U.S.C. 3582(c)(1)(A)] requiring 'extraordinary and compelling reasons,'" the government contends "it is not enough that Defendant suffers from . . . chronic conditions that he is not expected to recover from. Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." Id. at p. 11 (citing United States v. Ayon-Nunez, No. 1:16-CR-00130, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020); brackets omitted).

The government submits Mr. Weibel's medical records report "he has exercise induced asthma . . . [for which] [h]e was given an inhaler and told to 'use as needed for exercise induced asthma.'" Id. at p. 12 (citing Docket 109 at pp. 222 & 224). "On February 12, 2020," the government contends the defendant reported "his asthma is 'well-controlled' with the inhaler and he had 'no complaints.'" Id. (referencing Docket 109 at p. 481). While the CDC

6

identifies " 'moderate to severe' asthma as a risk factor[,]" the government argues Mr. Weibel's medical records "do not establish that [his] asthma is moderate to severe."  Id. at p. 13.

Second, the government argues none of Mr. Weibel's mental health diagnoses qualify as "conditions . . . included in the list of CDC-risk factors for COVID-19."  Id. at p. 14 n.7 (referencing https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/peopleat-higher-risk.html) (last accessed by government counsel on June 13, 2020).  The government contends Mr. Weibel "has not articulated support from the medical records that [he] is unable to provide self-care."  Id. at p. 16.  For this reason, the government submits Mr. Weibel "cannot meet his burden under [U.S.S.G. § 1B1.13] Application Note 1(A)."  Id.

> Third, the government submits:
>
> Even if the Court considers his exercised-induced asthma a risk factor according to the CDC, courts have held that "the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme."

Id. at p. 21 (citing United States v. Korn, 11-CR-384S, 2020 WL 1808213 at *5-6 (W.D.N.Y. Apr. 9, 2020) (emphasis in original; other citations omitted).  With this argument, the government concludes Mr. Weibel "cannot show that the possibility of contracting COVID-19 is an extraordinary or compelling reason to grant release given Defendant has failed to show that the BOP will not or cannot

7

guard against or treat such a disease." Id. at p. 22 (internal quotation marks omitted).

In contravention of Mr. Weibel's statement that he proposes to live with his stepfather, the government points to his April 7, 2020, statement to his BOP clinical psychiatrist. In that encounter, the clinician reported Mr. Weibel stated: "Says he does not talk to any of his family, only [his soon to be ex-wife] and some of her family. Says they have not been receiving his letters. Says he has phone privileges, but no money to call since he is not working." (Docket 109 at p. 469).

Finally, the government argues the 18 U.S.C. § 3553(a) factors weigh against granting Mr. Weibel compassionate release. The government submits Mr. Weibel "would pose a danger to public safety if released." (Docket 115 at p. 25). The government reminds the court it placed Mr. Weibel on lifetime supervised release because in the court's words, "it's the only way that I can make certain that you are not going to be a predator on children again or damage anyone else in any violent way." Id. (citing Docket 95 at p. 40:18-21). The government concludes "in light of [Mr. Weibel's] crime and the totality of relevant circumstances, even if this Court finds compelling or extraordinary circumstances, this Court should . . . deny the motion for a sentence reduction based upon the § 3553(a) factors." Id. at p. 28.

In reply, Mr. Weibel argues: "It is undisputed . . . [he] has asthma, which is included in the CDC guidelines of those at a higher risk of contracting and more severe consequence from the contraction of COVID-19. . . . Well controlled, or

8

not, asthma increases Mr. Weibel's risks of a negative outcome if he were to contract COVID-19." (Docket 119 at p. 2).

Section 3582(c) permits the district court to consider a prisoner's request for compassionate release after he exhausts the administrative remedies mandated by the statute.

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

The court finds Mr. Weibel exhausted the administrative relief provision contemplated by § 3582(c)(1)(A). Mr. Weibel submitted a request for compassionate release to the USP Tucson warden on May 26, 2020. (Docket 115-1). The 30-day period contemplated by § 3582(c)(1)(A) began to run from the date the prisoner's request was received by the warden. It matters not that the warden never responded to Mr. Weibel's request. United States v. Brunston, 18-CR-40145, Docket 68 at p. 4 (D.S.D. May 26, 2020). Mr. Weibel completed the administrative exhaustion contemplated by the statute and his motion is ripe for resolution by the court.

9

"Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release." United States v. McCoy, No. 20-6821, 2020 WL 7050097, at *3 (4th Cir. Dec. 2, 2020). That task was left to the United States Sentencing Commission. "[I]n promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) . . . [the Sentencing Commission] shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

Prior to the First Step Act, the Sentencing Commission established four categories for "extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Those categories generally focus on the defendant's age, medical condition, family situation and any other reasons the BOP deems to be extraordinary and compelling. U.S.S.G. § 1B1.13 cmt. n.1. The four categories have not been updated since December 2018 when the First Step Act became law.[3]

---

[3]The United States Sentencing Commission lacks a quorum and "currently has only two voting members, two shy of the four it needs to amend the [U.S.S.G.]." United States v. Marks, 455 F. Supp. 3d 17, 24 (W.D.N.Y. 2020) (references omitted).

The United States Courts of Appeals for the Second, Fourth, Sixth and Seventh Circuits have addressed the court's authority under the First Step Act.[4] See United States v. Brooker, 976 F.3d 228 (2d. Cir. 2020); United States v. McCoy, 2020 WL 7050097; United States v. Jones, No. 20-3701, 2020 WL 6817488 (6th Cir. Nov. 20, 2020); and United States v. Gunn, Case No. 20-1959, 2020 WL 6813995 (7th Cir. Nov. 20, 2020).

The Second Circuit identified the question at the heart of these cases, which is "whether the First Step Act allows courts independently to determine what reasons, for purposes of compassionate release, are 'extraordinary and compelling,' or whether that power remains exclusively with the BOP Director as stated in Application Note 1(D)." Brooker, 976 F.3d at 234. The Second Circuit concluded "that, despite Application Note 1(D), the First Step Act freed district courts to exercise their discretion in determining what are extraordinary circumstances." Id. The court held the language of U.S.S.G. § 1B1.13 "is clearly outdated and cannot be fully applicable." Id. at 235. "[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." Id. at 237; see also Gunn, 2020 WL 6813995, at *2 (agreeing with

---

[4]The United States Court of Appeals for the Eighth Circuit had two clear opportunities to address this issue but declined to do so. United States v. Rodd, 966 F.3d 740 (8th Cir. July 16, 2020) and United States v. Loggins, Jr., 966 F.3d 891 (8th Cir. July 31, 2020).

11

the Second Circuit that the Guidelines Manual "does not curtail a district judge's discretion"); Jones, 2020 WL 6817488, at *9 ("In cases where incarcerated persons file motions for compassionate release, federal judges . . . have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); McCoy, 2020 WL 7050097, at *8 ("As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction.").

The court retains its independent authority "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release." Brooker, 976 F.3d at 237. See also McCoy, 2020 WL 7050097, at *9 (same); Jones, 2020 WL 6817488, at *9 (same); Gunn, 2020 WL 6813995, at *2 (same). The purpose of the First Step Act was to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act.

USP Tucson currently has 66 COVID-19 positive inmates and 79 positive staff members. See https://www.bop.gov/coronavirus/ (last visited December 11, 2020). With a population of 1,359 inmates, USP Tucson is a high security facility. Id.

The Centers for Disease Control and Prevention ("CDC") found "adults of any age . . . might be at an increased risk of severe illness" because of "[a]sthma (moderate-to-severe) . . . ."  https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (bold omitted) (last visited December 11, 2020).

The National Asthma Education and Prevention Program identifies the two classifications of asthma of concern to the CDC.

> Moderate persistent asthma.  Asthma is considered moderate persistent if without treatment any of the following are true:
>
> - Symptoms occur daily. Inhaled short-acting asthma medication is used every day.
>
> - Symptoms interfere with daily activities.
>
> - Nighttime symptoms occur more than 1 time a week, but do not happen every day.
>
> - Lung function tests are abnormal (more than 60% to less than 80% of the expected value), and PEF [peak expiratory flow] varies more than 30% from morning to afternoon.
>
> Severe persistent asthma.  Asthma is considered severe persistent if without treatment any of the following are true:
>
> - Symptoms:
>
>     - Occur throughout each day.
>     - Severely limit daily physical activities.
>
> - Nighttime symptoms occur often, sometimes every night.

- Lung function tests are abnormal (60% or less of expected value), and PEF varies more than 30% from morning to afternoon.

https://www.uofmhealth.org/health-library/hw161158 (bold omitted) (last visited December 11, 2020).  Exercise-induced asthma will cause a person

> [to be] short of breath, cough, and feel tightness in the chest.  The symptoms usually start about 10 minutes after you start exercising, or 5-10 minutes after you finish.  Sometimes the symptoms come on several hours later. Exercise-induced asthma is most common in kids and young adults with asthma.  This condition is treatable and preventable.

https://www.webmd.com/asthma/qa/what-is-exerciseinduced-asthma (last visited December 11, 2020).

The court finds Mr. Weibel has not met his burden of proof and presented "extraordinary and compelling reasons" warranting a sentence reduction under § 3582(c)(1)(A)(i).  Based on the court's detailed review of the medical records, Mr. Weibel's exercise-induced asthma is not moderate or severe and does not come within the classification of asthma of concern to the CDC during the COVID-19 pandemic.  Mr. Weibel's oxygen saturation test (SaO2) levels are commonly in the 97-99 percent range.  (Docket 108 at pp. 10, 13, 35, 39 & 42). While the BOP clinical staff recommends Mr. Weibel exercise to improve his right shoulder chronic pain, his Albuterol inhaler is recommended for use as needed. Id. at pp. 18, 21, 27, 77 & 84.  This condition does not put Mr. Weibel's life at risk.  Even were the court to find Mr. Weibel's asthma life threatening during this pandemic, which it does not, the court must still consider if compassionate release comports with the § 3553(a) factors.

"[T]he history and characteristics of the defendant," requires the court to consider the defendant as a whole person.  Koon v. United States, 518 U.S. 81, 113 (1996).   In Mr. Weibel's case, the "nature and circumstances of the offense"—attempted enticement of a minor using the internet—is serious. 18 U.S.C. §§ 2422(b) and 2427.   Mr. Weibel's unlawful conduct was attempting to persuade or entice six young girls ranging in ages of 13-17 to engage in criminal sexual conduct over the period of March 2014 through December 2014. PSR ¶¶ 2 & 8.   Mr. Weibel has an extensive juvenile and adult criminal history. Id. ¶¶ 68-88.   Among other offenses, he has engaged in assaults, grand theft, violation of protection orders and possession of a firearm.   Id. ¶¶ 74, 76, 81, 83-85 & 87-88.   At the time of sentencing, the defendant earned "a total offense level of 39 and a criminal history category of VI," the highest category recognized by the sentencing guidelines.   Id. ¶ 134.   Based on those calculations his guideline range for imprisonment was "360 months to life."   Id.   The court varied downward to a sentence of 300 months with lifetime supervised release. (Docket 91; 18 U.S.C. §§ 3553(a)(2)(A) & (B))

Mr. Weibel has a history of posttraumatic stress disorder, depressive disorder, anxiety disorder and borderline personality disorder.   PSR ¶¶ 110-118; see also Docket 108 at pp. 1-2.   His lack of medication compliance both historically and while in BOP custody resulted in a number of violent, physical outbursts.   According to the BOP records, Mr. Weibel's disciplinary writeups include the following:

15

- Possession of a hazardous tool. (Docket 108 at p. 135);

- High level of disruptive conduct. <u>Id.</u> at p. 136;

- Exchanging money for contraband. <u>Id.</u>;

- Refusing work assignments. <u>Id.</u> at pp. 136-37; and

- Threatening bodily harm. <u>Id.</u> at p. 137.

The court has no expectation Mr. Weibel's conduct will significantly improve over the next several years. Given the gravity of the offense, the length of the defendant's sentence and his behavior while incarcerated, continued incarceration is necessary "to protect the public from further crimes of the defendant." <u>Id.</u> § 3553(a)(2)(C). Continued incarceration will "provide the defendant with . . . correctional treatment in the most effective manner." <u>Id.</u> § 3553(a)(2)(D). The court finds Mr. Weibel poses a danger to the public and he is not eligible for compassionate release under 18 U.S.C. § 3582.

**ORDER**

No good cause having been proven, it is

ORDERED that defendant's motion for compassionate release (Docket 106) is denied.

Dated December 14, 2020.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE